H. B. OWEN TIE CO. *v.* BANK OF WOODLAND.*

(Division B.   June 16, 1924.)

[101 So. 292.   No. 24087.]

CONTRACTS. *Agreement to pay sum due another to third person must be supported by consideration; forbearance without agreement to forbear, no consideration.*

An agreement to pay a sum due to another to a third person made after the completion of the first contract must have a consideration to make it binding, as it is a collateral contract, and where there was neither an agreement to forbear to sue on the original

contract, nor a release of the original .debtor, nor a novation of the contract, the mere fact that the promisee does forbear is insufficient. The agreement must be to forbear and must be binding upon the promisee.

*Headnote 1.    Contracts, 13 C. J., section 200, section 145.

APPEAL from circuit court of Chickasaw county.

HON. GUY MITCHELL, Special Judge.

Suit by Bank of Woodland against the H. B. Owen Tie Company. From a judgment for plaintiff, defendant appeals. Reversed and cause dismissed.

*Mitchell & Mitchell,* for appellant.

The appellant is attempted to be held liable to appellee solely on the letter written by appellant on December 18, 1920. It is the theory of appellee as stated in his declaration and as contended on the trial of the cause that appellant by reason of this letter became a surety to the bank on the notes of Simpson to the amount of eighteen thousand dollars. This was a collateral undertaking on the part of appellant, and therefore could furnish no basis for any liability without a consideration to support it. *Clopton* v. *Hall,* 51 Miss. 482.

In the instant case the appellee relies upon the naked promise of appellant as contained in the letter on which the suit is predicated. It will be noted that appellee did not offer a single word of proof to show what consideration induced appellant to write the letter in question. No explanation whatever, is given as to why the bank should write a letter to appellant and ask for information as to when appellant would pay for Simpson's ties. It is not shown by any testimony that appellant and appellee had any kind of agreement, express or implied, that would constitute any consideration for the promise contained in the letter. It is not shown that any kind of advantage or benefit resulted to appellant nor anything of prejudice to appellee.

The most that can be said is that appellee forbore taking any steps to enforce the collection of the debt from Simpson. But mere forbearance without an agreement to that is not a sufficient consideration, and it can make no difference that the act of forbearance was induced by the promise. 13 C. J. 348, sec. 200 (d), and authorities there cited. 6 R. C. L. 660.

This letter, standing alone, with no explanation of the circumstances, and no reasons given for it being written except the mere request 'of appellee for the information, cannot create any legal liability upon the part of appellant to pay the debt owing by Simpson to the bank It appears that this is decisive of the whole matter and upon this theory the case should be reversed and judgment given in this court for appellant. *Richardson Bros. Co.* v. *Fields,* 26 So. 981; *Ineal & Co.* v. *Peterson,* 19 L. R. A. (N. S.) 842; *Bank of Carrollton* v. *Latting,* 44 L. R. A. (N. S.) 481.

*Rush H. Knox* and *F. S. Harmon,* for appellee.

The promise of the Tie Company to Pay the Bank is Supported by Valid Consideration and is Therefore Enforceable. Contracts are of two kinds, bi-lateral and uni-lateral. In a bilateral contract a promise is given in exchange for a promise and each is consideration for the other. In a unilateral contract there is a promise on one side for which the performance of the act on the other side forms a consideration. The contract in this case belongs to the latter class. Here the tie company promised to pay the bank the eighteen thousand dollars which Simpson owed the bank. As a consideration for this promise, the bank forbore to sue Simpson on the notes past due and unpaid. The bank forbore to sell the ties upon which it held a lien. Forbearance to act may serve equally well as affirmative action as consideration for a promise.

Furthermore there was in this forbearance a benefit to the tie company in that it was able to go ahead under its contract with Simpson and market several thousand ties and make a profit thereon. There was likewise a detriment resulting to the bank from its forbearance to sue. By this forbearance to sue it refrained from exercising a legal right; it refrained from seizing the ties pledged as collateral security. There was then a benefit on one side and a detriment on the other. A forbearance to sue thus working a detriment to the bank was a valid consideration to support a promise of the tie company to pay Simpson's debt. 13 C. J. 348, section 200.

Attention of the court is called to the learned note in 19 L. R. A. (N. S.) at the bottom of page 842 which elaborately discusses three lines of decision apparently in conflict but really distinguishable upon careful examination. Appellant relies upon one group of these decisions, we rely upon another, and insist not only that our cases are better reasoned, but feel confident that the court will find that the facts of the case at bar bring it within the rule of the cases herein cited.

One line of authority holds that there must be a mutual promise of forbearance. This overlooks entirely the distinction between unilateral and bilateral contracts which Mr. Williston, the leading authority on contracts in America today, points out in his valuable treatise. See 1 Williston on Contracts, sec. 135.

The second line of cases, under the rule of which the facts of this case bring it, holds that an agreement to forbear may be implied from a promise to pay and other circumstances, followed by actual forbearance in reliance thereon. The third line of authorities holds that a request to forbear expressed or implied followed by forbearance in compliance therewith may furnish a good consideration for a promise to pay.

"In some jurisdictions apparently very slight circumstances, together with actual forbearance are sufficient to at least make a *prima-facie* case of agreement to for-

bear . . ." *Webbe* v. *Stone*, 58 Ill. App. 222. The mere fact that it did forbear is *prima-facie* evidence of such an agreement. See *Watters* v. *White*, 52 Atl. (Conn.) 401; *Sellers* v. *Jones*, 175 S. W. (Ky.) 553; *Boyd* v. *Freize*, 5 Gray (Mass.) 553; *Saunders* v. *Bank*, 71 S. E. (Va.) 714 at 717.

Again in *Edgerton* v. *Weaver*, 105 Ill. 43, it is said that, "whether actual forbearance, following a promise to pay interest upon interest for forbearance, is evidence of an acceptance of the promise, is a question of fact." The trial judge in the case at bar did so find as a question of fact from circumstantial evidence and in the light of this decision this court should uphold his findings.

Attention is also called to the following cases discussed on page 846 of the .case noted above cited, supporting fully the contentions of the appellee. *McMicken* v. *Stafford*, 197 Ill. 540; *Breed* v. *Freize*, 5 Gray 554; *Armstrong* v. *Snyder*, 15 Texas Civ. App. 394, 39 S. W. 379; *Lansing Bank* v. *Coleman*, 117 Mich. 177, 5 N. W. 624.

*Thos. E. Pegram,* also for appellee.

The rule that there must be a promise to forbear as well as actual forbearance to make sufficient consideration to support an action against a third person promisor has a well-recognized exception, which exception is just as much the law as the rule itself. The exception is when actual forbearance is granted on the request of the promisor. The true rule in cases like the instant one is stated in 6 R. C. L. 660.

"The rule seems to be that actual forbearance is not a consideration for a previous promise by a third person to pay a debt unless the promisor expressly or impliedly requested the forbearance."

"Where there is a request to forbear, there ought to be no doubt that forbearance to sue on enforceable contract or extension of time for the payment thereof is a sufficient consideration for a promise." See numerous

cases cited in footnotes 18 and 20 in support of above text.

*Mitchell & Mitchell,* for appellant in reply.

The well-reasoned case of *Queal & Company* v. *Peterson,* 19 L. R. A. (N. S.) 842, cited in original brief filed by our associates in this case, sustains our position absolutely. "Actual forbearance to sue is not a sufficient consideration to support a transfer of a negotiable instrument to secure the original debt, unless there was a valid promise to forbear for some specific time, so that for such time the right of action was suspended." *Smith* v. *Bibber,* 82 Me. 34, 17 A. S. R. 464.

But accepting the challenge laid down by appellee, does the letter written by appellant to appellee, by even a strained construction contain any request that they forbear proceeding against Simpson and his ties? We most earnestly insist that it does not, and that the court below was in error in holding that the letter was a request for forbearance. The only part of said letter which, by any stretch of the imagination, could be distorted into a request for forbearance is the last part of same, which is as follows: "Or if it will suit we might take an inventory of his ties on January 1st or soon after and give our note to cover the amount of the ties."

If this court should be of opinion that this was intended as a request on the part of appellant for forbearance in behalf of Simpson and his ties, it cannot avail the bank because they do not pretend that they ever answered this letter or ever accepted this proposition to take an inventory of the ties on January 1st and accept appellant's note for the value of same. This necessarily puts an end to any contention along this line, and eliminating this last paragraph in the letter, there is nothing in the other parts of it that even hints at any request for forbearance. We therefore respectfully submit that even if this court should hold that a mere request for forbear-

ance followed by actual forbearance without any agreement to forbear, constitutes a sufficient consideration to uphold a collateral undertaking, then the case of appellee must fail because the record is absolutely silent as to any request for forbearance.

ETHRIDGE, J., delivered the opinion of the court.

The Bank of Woodland sued J. S. Simpson and the H. B. Owen Tie Company on a contract originally made between the bank of Woodland and Simpson by which the bank furnished Simpson with money to purchase and get out cross-ties, taking Simpson's notes therefor, with an agreement to sell ties as collateral. These notes became due in the sum of eighteen thousand dollars before December 18, 1920, about which time the bank wrote Simpson, which letter is not made a part of the record and its contents not fully disclosed, but which is referred to in a letter written by the H. B. Owen Tie Company to the bank on December 18, 1920, which letter reads as follows:

"Algoma, Mississippi, Dec. 18, 1920.

"Mr. F. B. Hays, Cashier, Woodland, Miss.—Dear Sir: Mr. J. S. Simpson has just handed me a letter from you regarding amount due your bank of eighteen thousand dollars in which you desire a statement from us that we will take up and pay you for his ties by Jan. 1st. We are so rushed up with work now that we are not sure that we can get all his ties taken up by January 1st, but we will agree to pay you for all ties taken up by January 1st, and if we do not get that much taken up by that time will take them after January 1st, and pay you until this amount is paid. Or if it would suit we might take an inventory of his ties on January 1st, or soon thereafter and give our note to cover the amount of the ties.

"Very truly,
"H. B. OWEN TIE CO.
"By H. B. OWEN."

This suit so far as the liability against the H. B. Owen Tie Company is concerned is predicated upon this letter. On the same day J. S. Simpson gave to the H. B. Owen Tie Company authority to pay the Bank of Woodland eighteen thousand dollars out of his invoices or tie shipments made by him. There was no letter showing an acceptance by the bank of this letter of the H. B. Owen Tie Company as an agreement to release Simpson from an indebtedness on the contract. Neither was there anything to show a promise or agreement by the bank to forbear to proceed against Simpson for its money or any release by the bank for its claim against the ties or against Simpson. This suit was defended upon the idea that the appellant tie company was not bound by this letter because there was no consideration for it and no agreement to forbear or to extend the time for Simpson to perform his contract, and there is nothing in the record to show any agreement by the bank which would have bound it to extend the time for the collection of Simpson's debt or to release any of its claim against Simpson. In other words, the bank could at any time it saw proper have proceeded against Simpson and to seize and sell the ties upon which it had a showing. The Owen Tie Company, as a matter of fact, did not take up the ties which Simpson had at the time, and many of the ties which he then had on the right of way of the railroad for delivery to the tie company decayed and became worthless. It does appear in the record that Simpson had procured some cars to be loaded with the ties subsequent to January 1, 1921, but the tie company did not or could not furnish inspectors to inspect the ties and the cars were released by order of the tie company. The court below held that the letter constituted a contract and that there was sufficient consideration to support it, and there was a verdict in favor of the plaintiff and judgment thereon against the tie company, from which it appeals here.

It will be noted from the statement of the case that the letter of appellant to the bank was written after the execution of the notes of Simpson and after they had become due and payable, and we think the facts bring this case within the rule announced by this court in *Clopton* v. *Hall,* 51 Miss. 482, which held that the signing of the note after its delivery and after the execution contract is independent of the original contract and disconnected from its consideration, and the liability incurred for payment must depend upon some other inducement or consideration valuable in law, and that the burden of proof as to the consideration of a contract rests upon the plaintiff where it is not implied by law, and that the subsequent signing of the letter after the contract was executed between Simpson and the bank constitutes a separate agreement and does not in itself import a consideration, and that the consideration would have to be shown to make the letter a valid obligation.

In order for the letter to have had the effect of making a contract there must have been an acceptance of its terms, and an agreement to forbear proceeding against Simpson for a definite period which would be binding upon the bank, or there must have been a release of liability against Simpson. This the record wholly fails to show. But the bank held to its obligations against Simpson, and Simpson was sued in this case as a codefendant.

In *J. H. Queal & Co.* v. *Peterson,* 138 Iowa, 514, 116 N. W. 593, 19 L. R. A. (N. S.) 842, the Iowa court dealt wiht a similar case, and the following rule is announced in the syllabus in that case:

"An agreement in writing by one to take up a past-due note of another if it remains unpaid at a certain future date, without additional consideration to support it, is without consideration, and unenforceable, where the promisor makes no request for forbearance of suit against the maker of the note, and the promisee does not agree to forbear suit; and the mere fact that he does so forbear

is not sufficient to establish either such promise or request.''

Various authorities on the question before us are collected in the note to the L. R. A. report of this case.

We think there was want of consideration and that the letter was not definite and certain, as it contained at least two different propositions, neither of which is shown to have been accepted.

The judgment of the court below will therefore be reversed and the cause dismissed as to the appellant, H. B. Owen Tie Company.

*Reversed and dismissed.*