MARTIN *v.* DIXIE PLANING MILL.

(In Banc. Jan. 14, 1946.)

[24 So. (2d) 332. No. 35974.]

**H. F. Case**, of Quitman, for appellant.

Graham & Graham, of Meridian, for appellee.

**Roberds, J.,** delivered the opinion of the court.

This case involves the right of appellee to cut and remove timber from certain lands of appellant. Appellee

claims that right under a deed purportedly executed June 8, 1943, by appellant to one Anderson, who conveyed to appellee June 28th thereafter, and under a supplemental agreement dated April 31, 1944, executed by appellant to appellee extending for six months the time in which appellee had the right to cut and remove said timber. Appellant contends she did not sign the deed to Anderson and the extension agreement is invalid for the reasons hereinafter set forth. The chancellor found that she did sign the deed and held the extension agreement to be legal and valid.

Whether appellant signed the deed is a question of fact. The proof on that question is that J. A. Anderson had agreed with Mrs. Martin for the purchase of the timber at a price of $1,800. A deed was prepared to Anderson in accordance with the foregoing agreement, but the attorney for the purchaser objected to that deed because it had no provision for ingress and egress to remove the timber. Another deed was prepared by that attorney. That deed was carried by Anderson and C. L. McNeil to Mrs. Martin at her home, where she was confined to her bed by illness. Anderson and McNeil testified that she then and there signed it. Mrs. Martin and a Mr. Parker, who was then living at the home of Mrs. Martin and largely managing her affairs and operating her farm, testify she did not do so. Mrs. Martin's explanation of why she did not do so was that no notary public was present to take her acknowledgment. In that connection, Parker was asked, "What was said, if anything, about signing and acknowledging her deed?", and he replied, "She asked what would she do about that, there was no notary public there. They told her that would be all right, they would fix that," evidently meaning that Mr. McNeil, as a subscribing witness, could make affidavit to the execution of the instrument and it could be recorded on such affidavit as though duly acknowledged before a notary. That was, in fact, done the next day. In addition to the foregoing, Mrs. Martin admits,

and it is a fact, that on this occasion she was delivered by Anderson a check of appellee Planing Mill Company for $1,800 in payment of the timber described in the deed, and that she endorsed that check and the next day cashed it and got the money. The chancellor had before him that check and that endorsement, admitted to be the genuine sigature of Mrs. Martin, for comparison with her supposed signature to the deed. We do not have before us those signatures. It is evident, we think, from the foregoing that the finding by the chancellor that Mrs. Martin did sign the deed was not only supported by ample evidence but that the weight of the evidence, considering together the oral testimony and all the circumstances, was in favor of his conclusion.

The supplemental agreement reads:

"April 13, 1944

"In consideration of 5% of purchase price of timber sold to J. A. Anderson and conveyed by him to Dixie Planing Mill, Inc., Basic, Miss., we hereby extend time for cutting on the tracts of timber sold for a period of six months from expiration date of original lease. This option to apply if timber is not cut before original expiration date.

"Mrs. Anna Martin
"H. C. Parker

"Witnesses:
   "R. A. Armstrong
   "R. E. Vorden Esche
   "J. A. Anderson"

The circumstances under which it was executed were these: On or about its date, April 13, 1944, representatives of appellee approached Mrs. Martin and explained to her that the time for cutting and removing the timber under the deed would expire within two months; that appellee could, if necessary, remove timber within that time, but that the ground was then very wet and if it did go upon the land with heavy vehicles, equipment, tools and hands and cut and remove the timber, her land,

roads, and young timber, would be greatly damaged thereby, and it would be better for her that this be not done, and that they would like a year's extension, and that the usual price paid by appellee for such extensions was five percent of the original price paid for the timber. Mrs. Martin recognized the damage which would thus result to her property, but was unwilling to grant a longer extension than six months; whereupon the foregoing instrument was executed for that period of time. No money was paid her then. Appellee, relying upon that instrument, did not remove the timber by June 7, 1944, the expiration date under the deed, and on or about August 25, 1944, made preparations to begin removing the timber and offered to pay Mrs. Martin the $90. She did not then accept the money, asking the offerer to wait until the next day. She then consulted her attorney and the next day declined to accept the money. Appellee then went to the premises with equipment, machinery and workers for the purpose of cutting and removing the timber, whereupon Mrs. Martin had all of the workmen arrested for trespassing on her land. Appellee filed the present bill for injunction to restrain her from interfering with its removal of the timber. The chancellor granted temporary and final injunctions.

Appellant contends, first, that the foregoing instrument is an option without consideration paid or obligated to be paid, and, second, that it is unilateral, signed by only one party, and, therefore, not bindnig on either. Appellee says (1) that the document by its express terms vested immediately in appellee the right for six months after June 7th within which to remove the timber, such right to be exercised by appellee within that time if it did not remove the timber by June 7th—in other words, that the right was not optional; that it was vested, but its exercise was optional—and that it was obligated to pay the named consideration at, or before, the exercise of the rights, but, if wrong in this, that the other circumstances surrounding the execution of that docu-

ment and the action of the appellee in reliance thereon make it binding on appellant. The chancellor held that the instrument was not an option but that by its terms it vested in appellee upon its delivery the six months' extension right and was binding upon Mrs. Martin.

Aside from whether that construction is technically correct, the circumstances of this case and certain well established principles of law and equity applicable thereto impose upon Mrs. Martin the obligation to grant the six months' extension.

In Miller v. Bank of Holly Springs, 131 Miss. 55, 95 So. 129, 130, 31 A. L. R. 698, this Court said: "There is a sufficient consideration for a promise if there be any benefit to the promissor or any loss, detriment, or inconvenience to the promisee. The consideration to be sufficient in law need not be adequate. The consideration is sufficient if the person to whom the promise is made refrains from doing anything which he has the right to do, whether there be any actual loss to him or actual benefit to the party making the promise or not."

In A. L. I. Restatement of the Law of Contracts, sec. 90, p. 110, this principle is announced: "A promise which the promissor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." This Court adopted and applied that rule in Lusk et al. v. Universal Credit Co., 164 Miss. 693, 145 So. 623, and in Brewer v. Universal Credit Co., 191 Miss. 183, 192 So. 902.

It was greatly to the benefit of Mrs. Martin not to have her property damaged by the removal of the purchased timber when her lands were wet. Appellee had the right to then remove it. Appellee could and would have done so but for the execution of the extension agreement. It refrained from doing so, relying upon the promise of the extension of time. If it cannot now do so it loses the $1,800 it paid Mrs. Martin for the timber and any profit

464

it may have therein. This would be a great injustice which "can be avoided only by enforcement of the promise."

Affirmed.