McGEHEE *v.* McGEHEE

No. 39881 March 12, 1956 85 So. 2d 799

*Creekmore & Beacham,* Jackson, for appellant.

*Stokes V. Robertson,* Jackson, for appellee.

APPELLANT IN REPLY.

174

ARRINGTON, J.

Mrs. Tina Van Zandt McGehee, complainant in the court below and appellant here, filed bill of complaint against Leo R. McGehee, her husband, defendant below and appellee here, for appointment of a receiver and for dissolution of partnership business. The defendant answered the bill and denied the existence of a partnership

and other material allegations of the bill. From a decree dismissing the bill, the complainant appeals.

The evidence shows that the appellant and the appellee were married in March 1937; that in December 1937 they entered into business for themselves; that they borrowed $300 from the bank, with both of them signing the note and appellant's sister endorsed it. With the $300 they bought a truck and rented an office and went into the moving business. The appellant ran the office and the appellee drove the truck. Both of them devoted practically all of their time to the business; neither drew a salary for their work, but funds for living expenses were taken from the business and all profits were put back into the business; that as a result thereof, from this beginning, the business has grown to the extent that it is now worth in excess of $200,000. The various businesses are Leo Van Lines, Mississippi Moving and Storage Company, and Mississippi Storage Company, all located in Jackson, Mississippi, with branch offices at Gulfport and Greenville, Mississippi and Shreveport, Louisiana.

The evidence further shows that all bank accounts have been joint, and that all notes for money borrowed for operating expenses of the business were signed by both parties. There was no oral or written agreement evidencing the partnership at the beginning of their operations, however, according to testimony of their counsel, who had represented them since 1946, the appellant and appellee came to see him with reference to the appellee transferring one-half interest of certain real estate which was used in the business to the appellant. After this conference, the attorney wrote to the Collector of Internal Revenue requesting an opinion as to whether a gift tax would be due if the transfer were made. This letter is as follows:

"June 24, 1952

"Collector of Internal Revenue

"Jackson, Mississippi

"Attention: Mr. W. C. Eastland

"Dear Sir:

"Pursuant to our telephone conversation, I am taking this opportunity of writing and explaining the situation concerning two of my clients. It is the express purpose of this letter to give you these facts and to request from your department a ruling, based on the facts set out in this letter.

"The clients, which we will call Mr. A and Mrs. A, were married on March 24, 1937. Three months prior to that time they jointly purchased an automobile for approximately $300.00, he paying one-half and she paying one-half. At that time they were both employed. In December of 1937, they decided to go into business for themselves, and they borrowed $300.00 from the Jackson-State National Bank of Jackson, Mississippi. Both Mr. and Mrs. A signed the note and Mrs. A's sister endorsed the note. With this $300.00 they bought a truck. They then rented a van and rented office space in Jackson and started in business. There was no written lease covering the space rented for the office; however, the rent was only $6.00 per month. Mrs. A was in complete Charge of the office and Mr. A drove the truck. In the latter part of 1938, a certificate of public convenience and necessity was issued to Mr. A; however, Mrs. A was still in complete charge of running the office, Mr. A being in charge of the outside operation.

"In 1944, commercial property in the city was purchased by Mr. and Mrs. A, with the title being taken in Mr. A. The down payment on this property was $1,-500.00, which was paid out of the funds which they had earned in their business, and the balance of the purchase price was paid in regular monthly installments out of the income from the business.

"Since that time, additional real property has been purchased and additional certificates have been obtained, all being taken in the name of Mr. A. All of the real property has been paid for out of the funds earned in the business, as well as all payments on certificates and expenses involved in obtaining certificates.

"Prior to 1945, the income tax returns were prepared and filed by Mr. A himself and he is not sure whether or not separate returns were filed for himself and his wife. In 1945, a C.P.A. was employed to file his return, and the C.P.A. promptly divided the business operations into two separate businesses and filed one return in Mrs. A's name and the other return in Mr. A's name. This procedure was followed until the joint property law was made available to people in Mississippi, and since that time a joint return has been filed.

"Mrs. A is generally recognized as the office manager for the business. She has at all times been in complete charge of the office and Mr. A has been in charge of the outside operation. Mrs. A spends the full working day every day in or about the office, and, as previously stated, she is recognized by the general public as being in complete charge of the office, having under her supervision and control some 25 or 30 employees at the present time.

"In building up this business all bank accounts have always been joint, Mr. and Mrs. A, and all loans have been signed by both Mr. and Mrs. A. No salary has been drawn by either Mr. or Mrs. A from the business, such funds as are needed for their expenses being drawn by either of them.

"*It seems to us that Mr. and Mrs. A have been partners in this business from the very beginning. Certainly, there could be no facts in any other partnership* that are not present here except that formal partnership papers have not been drawn by them. Mrs. A takes the position that all of the real property and other assets of the busi-

ness were put in her husband's name simply for convenience, and that she is the true equitable owner of one-half of all the assets. Mr. A agrees with this and is entirely agreeable to putting the record title to one-half of these assets in Mrs. A's name. Upon advice of the writer, this has not actually been done, since there is some question concerning a gift in the event such an instrument is executed. It is submitted that the execution of such an instrument would constitute solely placing the record title in Mrs. A's name, whereas she has at all times owned the equitable title. (Emphasis ours)

"We would appreciate it if your department would give us a ruling as to the ownership of this property as it now stands, under the facts as above outlined. The parties are desirous of putting the record title exactly where the equitable title now stands and has always stood, and it is our opinion that no gift tax would be due and no gift tax return should be filed."

The Collector of Internal Revenue advised the attorney that no gift tax would be due, and deeds were executed accordingly and delivered to the appellant. Although the evidence in this case is voluminous, we are of the opinion, after a careful examination of the record, that this letter by their attorney, who had represented them since 1946 and was thoroughly familiar with the business, gives a fair and accurate history of the business.

Later, according to the record, the appellant and appellee did not agree as to the operation of the business and dissension and confusion prevailed, and in June 1954 the appellant and appellee went to their attorney's office to discuss their problem. According to the testimony of counsel, the appellant wanted the appellee to "put in her name a one-half interest in all of their assets and upon his failure to do so by 12 noon, then she would immediately have a bolt and lock put on the business and close it up and file suit for divorce on Monday morn-

ing." The appellee was not agreeable to this and the matter was discussed between them and their attorney for several hours without reaching an agreement; that later, the attorney's partner was called in to relieve him, and the discussion was continued with the appellee. A tentative agreement was reached between the appellant and appellee, and this agreement was later drafted and executed by the parties on June 8, 1954, as follows:

### "PARTNERSHIP AGREEMENT

"THIS AGREEMENT IN WRITING, this day entered into by and between Leo R. McGehee and Tina Van Zandt McGehee, husband and wife,

"W I T N E S S E T H:

"WHEREAS, the parties have engaged in the operation of the moving and storage and furniture businesses hereinafter mentioned, for a long period of years; and

"WHEREAS, certain of said businesses have been conducted in the name of Leo R. McGehee, individually, and certain in the name of Tina Van Zandt McGehee, individually; and

"WHEREAS, certain of the properties used in the operation of said businesses are not now owned by the parties hereto on an equal basis; and

"WHEREAS, it is the desire and intention of the parties to recognize the equal ownership of all of said properties, and the equal responsibility and authority for the management of said businesses; and

"WHEREAS, it is the desire and intention of the parties to enter into this agreement, whereby said equal ownership, responsibility and authority shall be maintained by the parties on a permanent basis;

"NOW, THEREFORE, it is mutually understood and argeed between the parties hereto as follows, to-wit:

"The parties hereto shall be equal partners in the ownership and operation of the local and long distance

household goods moving business conducted under the trade name of Leo Van Lines and Mississippi Moving and Storage Company, and in the local moving and storage business conducted under the name of Mississippi Storage Company, and in the retail furniture business conducted under the name of Mississippi Moving and Storage Company, all of which businesses are now being conducted by the parties in the City of Jackson, Mississippi and elsewhere with general offices located at 410 South Gallatin Street, Jackson, Mississippi.

"The assets of the partnership, to be equally owned by the parties, shall include the following:

"All operating rights, franchises, permits, and certificates of public convenience and necessity heretofore issued to Leo R. McGehee, d/b/a Leo Van Lines and/or Mississippi Moving and Storage Company by the Mississippi Public Service Commission, the Interstate Commerce Commission, and the regulatory agencies of the other states in which operations have been conducted.

"All office equipment, motor vehicles, supplies, and miscellaneous equipment of all kinds used in the operation of said businesses.

"All accounts receivable of said businesses and all cash on hand and in banks.

"All inventories of furniture and other merchandise on hand at the company offices in Jackson, Mississippi and elsewhere.

"All real estate owned by the undersigned, including the buildings and lands located at 410 South Gallatin Street, 140 North Gallatin Street, and 1058 Arbor Vista Boulevard, in the City of Jackson, Mississippi.

"It is agreed that appropriate applications will be filed with the Mississippi Public Service Commission, the Interstate Commerce Commission, and other necessary and appropriate regulatory agencies for the trans-

fer of said franchises, certificates and permits, and that this agreement is subject to the approval of said transfer by said agencies.

"Appropriate deeds of conveyance shall be executed to effect the equal ownership of said real properties.

"The parties shall, from time to time by mutual consent, divide the duties and responsibilities of management of the affairs of said partnership.

"The parties shall have an equal interest in the assets of said partnership, and shall share equally in the profits and losses of the businesses now conducted or hereafter to be conducted by said partnership. It is recognized and agreed that this division of ownership and this division of responsibility and authority embodied in this agreement is entered into by the parties for the purpose of insuring the stability of the operation of said businesses and the personal and business affairs of the parties. In order to accomplish this purpose it is understood and agreed that this agreement shall of necessity be permanent, and that it shall not be altered or terminated as long as the undersigned shall remain husband and wife, and that if the parties shall at any time be legally separated or divorced that this agreement shall thereupon be terminated, and the assets of the partnership divided equally between the parties, and that such division shall constitute a final and complete division of the property and property rights of the undersigned, and shall be in lieu of all other claims between the parties for separate maintenance, alimony or otherwise.

"In the event of dissolution of said partnership during the lifetime of the parties, and one party desires to continue the operation of said businesses, such partner shall have the right to purchase the interest of the retiring partner in the assets of the partnership, and to defer the payment of the purchase price therefor over a period of five years from the date of such dissolution.

"WITNESS OUR SIGNATURES, in duplicate, on this the 8 day of June, 1954.

"/s/ Leo R. McGehee
"/s/ Tina Van Zandt McGehee"

(Duly acknowledged by both parties, and filed and recorded in the office of the Chancery Clerk of Hinds County, Mississippi on September 2, 1954.)

A few weeks after this agreement had been executed, the parties were unable to work in the business as they formerly had because of disagreement, and as a result, the appellant left the business and filed the bill now before the Court.

The chancellor held the partnership agreement invalid on three grounds: (1) That there was no consideration; (2) duress of the appellant in threatening to close the business and apply for a receivership and to file suit for divorce; and (3) that certain provisions of the agreement were never carried out. We deal with these questions in the order stated.

██ ██ Forbearance to sue is a sufficient consideration for a promise, ██ ██ and the forbearance of appellant to sue appellee for her claimed half interest in the businesses was a sufficient consideration to support the partnership contract. We need not consider whether appellant would have prevailed in the suit with which she threatened the appellee. Appellant had reasonable grounds to believe she had a valid claim to one-half the property involved, and if it be conceded that the claim had elements of doubt as to its validity, it is nevertheless sufficient consideration for the contract. 12 Am. Jur., Contracts, Par. 84, p. 578, et seq.; Miller v. Bank of Holly Springs, 131 Miss. 55, 95 So. 129; 31 A.L.R. 698; Martin v. Dixie Planing Mills, 199 Miss. 455, 24 So. 2d 332; Smaller War Plants Corp. v. Queen City Lumber Co., et al, 200 Miss. 627, 27 So. 2d 531.

██ ██ We are of the opinion that appellee failed to prove duress. The substance of the proof on the ques-

tion of duress was that appellant threatened to file suit against appellee to enforce her alleged rights to one-half of the property.

██ ██ "It is the well-established general rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court, or for any person to declare that he intends to use the courts wherein to insist upon what he believes to be his legal rights. It is never duress to threaten to do that which a party has a legal right to do, and the fact that a threat was made of a resort to legal proceedings to collect a claim which was at least valid in part constitutes neither duress nor fraud such as will avoid liability on a compromise agreement. Hence, a deed is not given under duress when made as counter-security to sureties upon their threat that otherwise they will compel, by legal process, the settlement of the matters for which they are sureties, and a mortgage given to secure a creditor on a running account is not invalid for duress if given after threats are made to shut off the account and sue for the amount due." 17 Am. Jur., Duress and Undue Influence, par. 17, p. 892. See also 13 Words and Phrases, Permanent Edition, Duress.

██ ██ Appellee is in no position to complain that the partnership was not carried out by the parties. The franchises standing in the name of the appellee could not be transferred to appellant by her act alone, and appellee did nothing to comply with the terms of the contract in that regard. The fact that appellant did not convey one-half of the home property to appellee does not invalidate the contract, especially since appellee failed to do that required of him in reference to the franchises which were far more valuable than the home.

██ ██ Appellee contends that the consideration for the contract was founded on the work and labor of appellant in the businesses, and that Section 454, Code of

1942, providing that husband and wife shall not contract with each other so as to entitle one to claim or receive any compensation from the other for work and labor, renders the contract invalid. We are of the opinion that Section 454 has no application to this case. This court has held that a married woman may lawfully enter into a partnership with her husband. Jones, et al v. Jones, 99 Miss. 600, 55 So. 361.

 If we should hold that the partnership contract was void either because of failure of consideration or duress, it would necessarily follow that appellee perpetrated a fraud on the United States when he caused his attorneys to urge on the Collector of Internal Revenue Department by the 1952 letter that a partnership then existed in order to save gift taxes. In such a situation, there is a presumption against fraud, bad motives and dishonesty. The partnership agreement expressly recognized prior equal ownership of the property involved, as well as equal responsibility and authority in the operation of the business, and is in full accord with the previous operation of the businesses and not inconsistent therewith.

We hold that the partnership agreement was valid. The case is reversed and remanded for further proceedings not inconsistent herewith.

The attorneys referred to in the foregoing opinion are not the attorneys now representing the parties in this suit.

REVERSED AND REMANDED.

*Roberds, P.J.,* and *Lee, Ethridge,* and *Gillespie, JJ.,* concur.