GILLESPIE, Presiding Justice.
Mr. and Mrs. Peter K. Herring sued Southern Pine Superior Stud Corporation (hereinafter Southern Pine) and Mid-South Corporation (hereinafter Mid-South) in the Circuit Court of Franklin County. Upon a jury verdict a judgment was entered in favor of plaintiffs in the sum of $2,100. Defendants appealed to this Court.
The declaration alleged that a truck leased by Mid-South to Southern Pine, which had been parked by defendants’ servant, rolled down a hill and struck and damaged plaintiffs’ automobile. Mrs. Herring was using the automobile on a visit to Meadville, Mississippi. Her husband was in military service stationed in Maryland. It was also alleged that an agent *633 of defendant told Mrs. Herring that defendants would be responsible for the cost of repairing the automobile, the rental of a substitute automobile while plaintiffs’ automobile was being repaired, the cost of transporting the repaired automobile to Maryland and returning the rented automobile to Meadville, and all other ex--penses incurred by plaintiffs. It was alleged that the plaintiffs incurred the following costs in connection with the damage to their automobile: repair of automobile, $601.59; rental of a substitute automobile for a week before Mrs. Herring returned to Maryland, $120; rental of substitute automobile from July 19, 1965 to August 19, 1965 while plaintiffs’ Chevrolet was being repaired, $750; telephone calls, $41.50; other repairs at Meadville, $33.39; and repairs made after plaintiffs’ automobile was returned to Maryland, $17.50; paid to Mrs. Herring’s brothers a fee of $298 for transporting plaintiffs’ automobile to Maryland after it was repaired and returning the rental car to Meadville. They also alleged that defendants were liable for an attorney’s fee of $587.60. The declaration alleged that defendants’ agent admitted liability for the accident involving damage to their automobile. It was further alleged that the plaintiffs relied on the promises of defendants’ agent to pay the aforesaid costs and expenses, but defendants declined to offer to pay but about half of the amount thereof. Plaintiffs contend that this constituted a breach of contract.
The facts are stated in the light most favorable to plaintiffs in whose favor the jury returned its verdict.
The day following the accident Mrs. Herring called Southern Pine and told one of the officers that her automobile had been damaged by one of Southern Pine’s trucks. The truck was insured against public liability by Universal Underwriters whose claims were adjusted by H. B. Wellborn & Company, independent adjustors. Southern Pine had been instructed to contact Well-born regarding claims. When Mrs. Herring called the Southern Pine officer he told Mrs. Herring that he would have an insurance adjustor contact her. Mr. Patton, an adjustor employed by H. B. Wellborn & Company, then called Mrs. Herring. Within the next few days he had several personal conversations with Mrs. Herring and also talked to her several times by telephone. Mr. Patton told Mrs. Herring that his boss said “they” would pay the cost of repairing plaintiffs’ automobile, the expense of a rented automobile, the cost of taking the Herring automobile to Maryland after it was repaired and be responsible for all expenses incurred. This is Mrs. Herring’s version of the conversations, and the version the jury obviously believed. Mr. Patton’s version of the conversation was that his boss said to tell Mrs. Herring to go ahead and keep a record of whatever expenses Mrs. Herring and her husband had to incur for loss of use of the automobile, and when time came to settle the claim they would take it into consideration. Patton also testified that he told Mrs. Herring that “we” would be willing to pay the cost of repairing the Herring automobile.
The answer of defendants denied that Mr. Patton was the agent of defendants and denied that he made any contract with Mrs. Herring.
The main issue is whether the evidence justified a finding that Patton was the agent of defendants. Defendants were insured as to public liability by Universal Underwriters. H. B. Wellborn & Company, an independent adjusting firm, was the adjustor for Universal Underwriters. When Mrs. Herring reported the damage to her automobile caused by one of the defendant’s trucks, an officer of Southern Pine notified H. B. Wellborn & Company, who dispatched one of its adjustors to Meadville to adjust the claim. That -is the sole connection of Southern Pine with the matter as far as agency is concerned. Ap-pellees have not cited a case where an independent adjustor for an insurance company becomes the agent of the insured for the purpose of making contracts, and our investigation indicates there is no such au *634 thority. Mississippi Code 1942 Annotated, section 5706 (1956) cited and relied upon by appellees, concerns agents and adjustors of insurance companies. Under the terms of the statute the insurance company may be bound by its representative agent or adjustor.. In our opinion this statute does not apply so as to make the adjustor of the insurance company the agent of the insured. We conclude that there was no evidence justifying a finding that Patton was the agent of the defendants.
It is true, as testified by an official of Southern Pine, that when Patton was investigating the claim of plaintiffs he was looking after the interests of Southern Pine. But there is no proof that he had any authority to enter into a contract on behalf of Southern Pine.
 Another reason why the judgment must be reversed is that there was no contract on which an action could be based. The insurance company, represented by the adjustor, was negotiating the settlement of the Herrings’ tort claim against Southern Pine and Mid-South. An enforceable exec-utory accord may arise where a completed agreement is made to adjust a claim. But in order to be enforceable an executory contract to settle an unliquidated claim should be certain, full and complete in itself so as to preclude all future controversy. Habgood v. Van Dyke Taxi & Transfer, 128 Misc. 884, 220 N.Y.S. 454 (1927), aff’d, 220 App.Div. 801, 222 N.Y.S. 815 (1927). The all-embracing promise to take care of all expenses in the future was too indefinite to be enforceable as a contract. Such an agreement invited controversy in the future and was too indefinite to be enforceable even if we assume the other formalities necessary to a binding contract existed. Oleg Cassini, Inc, v. Dorene Fashions Corp., Sup., 155 N.Y.S.2d 64 (1956), rev. per curiam, 3 App.Div.2d 706, 159 N.Y.S.2d 664 (1957), aff’d, 4 N.Y.2d 826, 173 N.Y.S.2d 621, 149 N.E.2d 899 (1958). The most important part of the contract was the amount to be paid. This was left undetermined except for the amount of the repair bill which was about one third of the amount claimed to be due plaintiffs.
The court has given careful consideration to the method of disposition of this case, whether to reverse the judgment and enter one here for appellants, or reverse and remand with leave of plaintiffs to amend the declaration so as to state a case in tort. We have decided that under the peculiar circumstances justice demands the latter.
Reversed, judgment vacated, and case remanded with leave to file amended declaration sounding in tort.
JONES, BRADY, INZER and ROBERTSON, JJ., concur.