WALKER, Justice:
Union Oil Company, appellant, brought suit on an open account for gasoline, etc. purchased by the appellee, Wood, who leased a service station from Union. Wood answered admitting the indebtedness of $4,601.33 for the merchandise purchased but filed a counterclaim against Union for $9,577.27. The county court ruled in favor of Wood on the counterclaim but found the amount due to be $4,601.33, the exact amount for which Union had sued Wood and since the amounts offset each other, a judgment was entered that each party should take nothing. An appeal was then taken to the circuit court which affirmed the judgment of the county court. We reverse and enter judgment for Union in the amount of $4,601.33.
*820 The basis of the counterclaim by Wood against Union arose out of the following facts: In 1958 Wood leased a service station near Boyle, Mississippi, from Union Oil Company. Wood operated the service station as a truck stop and in 1963 made improvements thereto by increasing the size of the restaurant, adding a bunk room, television room, shower and toilet facilities at a cost of some $8,000. These improvements were not made at the direction of Union Oil but were made by Wood for the purpose of increasing his truck stop fuel sales.
Between the years 1963 and 1969, each time that the lease expired, a new lease was entered into between the parties with the lease in question being dated October 1, 1969, and to run for a term of one year. This lease provided, among other things, that upon termination for any reason any improvements made thereon would become the property of Union Oil Company. The lease further provided that in the event the property became subject to eminent domain proceedings all sums received as a result thereof would become the property of Union. In May, 1970, at a time when the lease had approximately four months left to run, the State Highway Commission instituted eminent domain proceedings for a portion of the leased premises, the taking of which portion destroyed the property’s usefulness as a truck stop. Both Union and Wood were made defendants to the eminent domain proceedings. Shortly thereafter Union entered into negotiations with the State Highway Commission in an attempt to reach an out-of-court settlement of the damages caused by the taking. During this time, Wood’s attorney and the attorney for Union also had discussions between themselves relating to Wood’s claim for the improvements made in 1963. Soon after a settlement was reached with the State Highway Commission in which Wood received $1,500 for his leasehold interest, Union determined that it was not indebted to Wood for the improvements. Furthermore, when it was discovered that Wood in fact owed Union $4,601.33, the present suit was instituted with Wood filing a counterclaim for the value of his improvements.
Wood alleged in the counterclaim that Union promised that if he would cooperate and testify for Union in its eminent domain proceedings that Union would pay him for the improvements to the truck stop. Union answered the counterclaim and denied that there was any such agreement and alleged that union’s attorney spe-fically informed Wood’s attorney that the matter of the improvements would have to be resolved later after the full facts had been developed.
It is interesting to note that Jackie Wood testified very frankly that no one from Union Oil had agreed to pay him and he remarked that “all they did was talk about it.”
It is clear from the county judge’s opinion, which is a part of the record, that Wood cooperated with Union Oil in their negotiations with the State Highway Commission and that there was a forbearance on his part to assert his questionable claim for the improvements to the truck stop in the eminent domain proceedings. However, before forbearance may be asserted as consideration for the basis of a claim, there must be a promise to do something on the part of the opposite party before recovery can be had for the forbearance. In this case, the county judge found, at most, that Union promised to “endeavor to work out a mutually satisfactory solution.” He also found “. . . that Union would consider his claims . . . that upon settlement of their claim, they would then consider the merits of his claim for compensation for improvements made.”
Union did consider the claim, but concluded that they were not indebted to Wood for the improvements.
While forbearance to assert a claim that is not completely groundless can be *821 consideration for a promise,[1] without the promise there is no contract.
This case falls squarely within the holding of Southern Pine Superior Stud Corporation v. Herring, 207 So.2d 632 (Miss.1968) where the Court said:
Another reason why the judgment must be reversed is that there was no contract on which an action could he based. The insurance company represented by the adjustor, was negotiating the settlement of the Herrings’ tort claim against Southern Pine and Mid-South. An enforceable executory accord may arise where a completed agreement is made to adjust a claim. But in order to be enforceable an executory contract to settle an unliquidated claim should be certain, full and complete in itself so as to preclude all future controversy. Habgood v. Van Dyke Taxi & Transfer, 128 Misc. 884, 220 N.Y.S. 454 (1927), aff’d, 220 App.Div. 801, 222 N.Y.S. 815 (1927). (207 So.2d at 634.) (Emphasis added.)
A promise to “give consideration to a claim” or to “endeavor to arrive at a mutually satisactory settlement” with regard to a doubtful and unliquidated claim is too indefinite to be enforceable as a contract. Such an agreement invites future controversy and is unenforceable even assuming that the other formalities necessary to a binding contract exist. The most important part of this alleged contract was the amount to be paid Wood for his interest in the improvements under a lease which had only approximately four months left to run, after which the improvements would have become the sole property of Union Oil Company. There was no such agreement, and thus we have the resulting controversy.
We are of the opinion that the lower court erred in finding for Wood in the amount of $4,601.33 on his counterclaim and allowing it to offset the admitted indebtedness to Union for the same amount.
We do not find it necessary to discuss the remaining assignments of error.
Therefore, this cause is reversed and judgment entered here for appellant Union Oil Company against the appellee Wood in the amount of $4,601.33.
Reversed and judgment here for appellant in the amount of $4,601.33.
RODGERS, P. J., and SMITH, ROBERTSON and BROOM, JJ., concur.

. See McGehee v. McGehee, 227 Miss. 170, 85 So.2d 799 (1956).