**TOYOTA MOTOR SALES, INC. and Toyota Motor Corporation, Plaintiffs,**

v.

**Michael Derek FARR and Sharon Farr Burt, Defendants.**

**Civ.A. No. 4:02 CV 312LN.**

United States District Court, S.D. Mississippi, Eastern Division.

Nov. 6, 2003.

Mark N. Bodin, McGlinchey Stafford, New Orleans, LA, Timothy W. Lindsey, William H. Leech, McGlinchey Stafford, Jackson, MS, for Plaintiff.

Wayne E. Ferrell, Jr., Andre F. Ducote, Lundy & Davis, L.L.P., Jackson, MS, Hunter W. Lundy, Lundy & Davis, Lake Charles, LA, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

This cause is before the court on the motion of plaintiffs Toyota Motor Sales, Inc. and Toyota Motor Corporation (collectively Toyota) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants Michael Derek Farr and Sharon Farr Burt have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted.

The following facts are not in dispute. On November 20, 1996, Michael Derek Farr and his mother, Sharon Farr Burt,[1] filed a products liability action in the Circuit Court of Hinds County against a number of defendants, including Toyota, seeking to recover damages on account of severe injuries sustained by Michael Derek Farr in an accident in which he was a passenger in a 1986 Toyota 4x4 pickup truck. On April 26, 1999, the Farrs entered into a written settlement agreement with Toyota and certain other defendants in that action, pursuant to which they agreed to dismiss with prejudice any claims they had or might have against Toyota relating to the subject matter of the lawsuit, and in which they further agreed to indemnify and hold harmless Toyota against and from any and all other claims that may be asserted by the Farrs or on their behalf because of any loss or expense suffered as a result of the incident underlying the state court lawsuit, including claims made by way of indemnity, contribution, subrogation, third-party demand, cross-claim, intervention, medical lien or otherwise.

On October 27, 1999, several months after execution of the settlement agreement, the Farrs moved for and were granted leave to amend their state court complaint to name two additional defendants, Goodyear Tire & Rubber Company and Tokai Rika Company, Ltd. (Tokai Rika), the latter of which had manufactured the seat belt restraint system that had been installed in the vehicle in question and was added by the Farrs as a defendant based on their expert's conclusion that Michael Derek Farr's seatbelt had malfunctioned in the accident, resulting in his ejection from the vehicle. Following the addition of these two defendants, the case was removed to federal court by Goodyear, and assigned Case No. 3:99CV891WS.

Subsequently—in fact, nearly three years later—Toyota filed the present action, seeking a declaratory judgment that the Farrs were precluded from pursuing their suit against Tokai Rika and/or are required under the terms of their settlement agreement to indemnify TMS and TMS for its costs of defending Tokai Rika

---

1. Although the former Mrs. Farr has remarried and is now Mrs. Burt, for ease of reference, the defendants herein will be collectively referred to as the Farrs.

and for any judgment obtained by the Farrs against Tokai Rika inasmuch as Tokai Rika is contractually entitled to indemnity from Toyota for the claims asserted against it by the Farrs in the underlying litigation and since the Farrs are, in turn, bound by their settlement agreement with Toyota to indemnify Toyota for any loss or expense incurred as a result of claims against it for indemnity or otherwise arising out of the accident at issue in the underlying litigation. Toyota has now moved for summary judgment, contending that as a matter of law, based on the undisputed facts of record, it is obligated to indemnify and defend Tokai Rika against the products liability claim brought against Tokai Rika by the Farrs, and that the Farrs are obligated, in turn, to indemnify Toyota for the same costs (and any judgment), thereby creating a "circuity of action" which requires extinguishment of the Farrs' suit against Tokai Rika.

In response to the motion for summary judgment, the Farrs do not deny that the settlement agreement they executed with Toyota obligates them to indemnify Toyota against and from any and all claims that may be asserted by the Farrs because of any loss or expenses suffered as a result of the incident underlying the state court lawsuit, including claims made by way of indemnity. They argue, though, (1) that Toyota has failed to prove the existence of or the legal requirements of a valid contract between plaintiffs and Tokai Rika requiring indemnity by Toyota, in that Toyota has not produced the original written contract which is the source of Tokai Rika's alleged right to indemnity and/or because it has not established that any consideration was paid for Tokai Rika's alleged right to indemnity; (2) that if a valid indemnity agreement exists, the right to indemnity was waived by Tokai Rika; and (3) that in any event, by defending Tokai Rika in the underlying for nearly two years without invoking its alleged right to indemnity from the Farrs, Toyota has waived any right to indemnity from the Farrs. In the court's opinion, none of the Farrs' objections have merit.

■ The court would observe at the outset that Toyota's motion, when originally brought, was premised on the "circuity of action" doctrine, pursuant to which a cause of action is extinguished "when as a result of indemnification obligations or settlement agreements between the parties, a plaintiff would end up indemnifying another party for its own claim." *El Paso Refinery, LP v. TRMI Holdings, Inc.*, 302 F.3d 343, 349–50 (5th Cir.2002). Toyota sought an adjudication that the Farrs were precluded by this doctrine from pursuing their claim against Tokai Rika. As it has turned out, the Farrs' claim against Tokai Rika was tried while Toyota's motion was pending, and a verdict was returned in favor of Tokai Rika. Consequently, Tokai Rika has not been, and presumably will not be required to pay any judgment to the Farrs for which Toyota would or might be required to indemnify Tokai Rika and for which the Farrs would, in turn, be required to indemnify Toyota in accordance with their settlement agreement. However, it appears undisputed that from the commencement of and throughout the Farrs' litigation against Tokai Rika, Toyota provided Tokai Rika's defense. Toyota submits that it was required to provide Tokai Rika's defense in accordance with the terms of its contractual indemnity obligation to Tokai Rika and that it is consequently entitled to indemnity from the Farrs for the defense costs incurred in the defense of Tokai Rika. The court thus proceeds to address the parties' arguments with this understanding of the posture of this case in relation to the underlying litigation against Tokai Rika.

■ Initially, the Farrs argue in this case that the documentation submitted by

Toyota in support of its claim that it is contractually obligated to indemnify Tokai Rika falls short of accomplishing that objective in that the documents upon which Toyota relies consist of nothing more than a "vague series of letters" in which Toyota first offers Tokai Rika the opportunity to purchase products liability insurance coverage, Tokai Rika then accepts the offer and Toyota then bills Tokai Rika for the cost of the insurance coverage. The Farrs submit that because the record is devoid of proof that Tokai Rika actually remitted any consideration to Toyota to receive the benefit of indemnity, the requisites of a valid contract for indemnity have not been proven and Toyota is consequently not entitled to the judgment it seeks. *See Hunt v. Coker*, 741 So.2d 1011, 1015 (Miss.1999) ("A valid contract must include the following essential elements: '(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.'") (quoting *Lanier v. State*, 635 So.2d 813, 826 (Miss.1994)). However, there is ample uncontroverted evidence establishing the element of consideration. In particular, the record establishes, through documentation and testimony, that instead of a cash payment to Toyota, consideration was exchanged by Toyota's taking credit from Tokai Rika's accounts receivables for components supplied to Toyota. The Farrs' suggestion that Toyota cannot establish its case without proof in the form of a check or other documenta-

tion evidencing a direct *payment* of money as consideration is not well grounded, for the law is clear that consideration "may consist either in some interest, right, profit or benefit accruing to the one party, or some forbearance, detriment, loss of responsibility given, suffered or undertaken by the other." *Lowndes Cooperative Ass'n v. R.L. Lipsey*, 240 Miss. 71, 126 So.2d 276, 278 (Miss.1961).[2]

The Farrs further note that Tokai Rika's putative right to indemnity is traceable to an alleged original agreement executed between Tokai Rika and Toyota in the 1970s, and they argue that since that original agreement has not been produced, then the actual terms of the alleged written contract for indemnity[3] are unknown. Yet in the court's opinion, the documents submitted by Toyota in support of its motion are sufficient to establish a contract for indemnity, the terms of which are readily ascertainable. Most notably, the record contains, *inter alia*, documentation establishing Tokai Rika's right to indemnity, as follows:

> This is to confirm that for consideration of the attached debit memorandum No. 111424, any Japanese parts supplier firm for new motor vehicles ... designated by Toyota Motor Corporation and which is timely reported to and recorded on the insurance policy of Toyota Motor Sales, U.S.A., Inc. (which included Tokai Rika) will be indemnified and held harmless under the Products Liability self-insured program of Toyota Motor Sales, U.S.A., Inc., for parts or materials exclusively manufactured in Japan or exclu-

---

**2.** The Farrs acknowledge that Yoshikazu Ito, a representative of Tokai Rika with personal knowledge, testified that Tokai Rika paid the invoice through a reduction of accounts receivables. They mistakenly conclude that in the absence of proof that a reduction *actually* took place, Mr. Ito's testimony is not proper summary judgment evidence and should be disregarded or stricken. There is no require-

ment, however, that the sworn testimony of this nature from a witness be corroborated to be admissible and sufficient to establish material facts, such as the fact that a reduction actually took place.

**3.** *See* Miss.Code Ann. § 15–3–1 (agreement to answer for the debt of another must be in writing).

sively assembled in Japan and sold to [TMC] for installation as original equipment in the manufacture in Japan, Canada, or the United States of America of new vehicles or products for new vehicles....

The indemnification set forth above will also extend to Japanese parts suppliers who manufacture in Japan and distribute products for new motor vehicles ... to Toyota Motor Sales, U.S.A., Inc., through a trading subsidiary rather than directly through [TMC].

It is further agreed that the indemnity provided under the Products Liability self-insured program of Toyota Motor Sales, U.S.A., Inc. shall be excess and non-contributing with any insurance available to persons or organizations which would have otherwise been indemnified under this program....

In addition, upon timely notice to Toyota Motor Sales, U.S.A., Inc., the aforementioned Japanese suppliers (excluding tires) will be added as additional insureds on the excess liability insurance purchased by Toyota Motor Sales, U.S.A., Inc., and will be covered subject to the limits and terms of these policies. Note:

The indemnitee is required to observe the following conditions:

In the event that any claim for damages is made or any suit is brought against the Additional Insured, the Additional Insured shall give immediate notice of such fact and produce any copy of the documents concerned, such as claim letter and summons and complaint, to us through [TMC].

In addition, Yoshikazu Ito, a Tokai Rika representative, testified that Tokai Rika's sole protection from the lawsuit filed against it by the Farrs was its indemnity agreement with Toyota, pursuant to which Toyota is obligated to defend and indemnify Tokai Rika for products liability lawsuits brought against it, including that brought by the Farrs. Thus, Mr. Ito testified, when it learned of the Farrs' complaint against it, Tokai Rika immediately sent it to Toyota with instructions to "take care of it." Since that time, and throughout the Farrs' litigation against Tokai Rika, Toyota provided Tokai Rika's defense and plainly did so in accordance with its contractual obligation to Tokai Rika.

■ The Farrs do not deny that their settlement agreement with Toyota requires them to indemnify Toyota for amounts Toyota is actually required by law to pay for the defense and indemnity of another against whom suit is brought relating to the accident which was the subject of the settlement agreement. The Farrs argue, however, that even assuming a valid indemnity agreement exists between Toyota and Tokai Rika—which it does—Toyota has waived its right to seek indemnity from the Farrs and should be estopped from seeking such relief.[4] In this vein, the Farrs point out that their complaint against Tokai Rika was filed in November 1999 and was received by Toyota in April 2000, and yet, according to the Farrs, "not until August of 2002 did Toyota file its Motion for Declaratory Judgment or any form advise the Farrs that it would seek indemnity under the Settlement Agreement." Instead, Toyota allowed the Farrs to proceed in their lawsuit against Tokai Rika for two years without asserting any right to indemnity. The

---

**4.** The Farrs asserted in their response to Toyota's motion that if a valid indemnity agreement exists between Toyota and Tokai Rika, the right to indemnity was waived by Tokai Rika. They have not explained the basis for this assertion and have not argued this point in their supporting memorandum, and the basis for any such argument is not otherwise apparent to the court. Accordingly, this argument is rejected.

Farrs thus submit that Toyota's present claim for indemnity, which is inconsistent with its prior position, has prejudiced the Farrs, as a result of which Toyota should be deemed to have either waived any right to indemnity it might have under the settlement agreement, or should be equitably estopped from claiming a right to indemnity. *See Taranto Amusement Co., Inc. v. Mitchell Assocs., Inc.*, 820 So.2d 726, 729–30 (Miss.2002) (describing waiver as intentional relinquishment of a known right, and holding that "[t]o establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived"); *Thomas v. Bailey*, 375 So.2d 1049, 1052 (Miss.1979) (stating that "[i]n order to establish equitable estoppel, a party must show a change of position in reliance upon the conduct of another and detriment caused thereby."). The Farrs have the burden to establish waiver or grounds for estoppel, and have not sustained that burden. Simply put, there is nothing in the record to suggest that Toyota at any time committed such acts or omissions which could fairly be said to have evidenced an intention permanently to surrender its right to seek indemnity from the Farrs, or that the Farrs detrimentally changed their position in reliance on any conduct by Toyota. On the contrary, the record reflects that by no later than September 1999, one of the attorneys who had originally represented Toyota and who later represented Tokai Rika had specifically informed the Farrs' attorney of his understanding that Toyota was contractually bound to indemnify Tokai Rika from the claim the Farrs had asserted. According to Toyota, it thereafter unsuccessfully attempted to convince the Farrs

of its indemnity relationship with Tokai Rika, and requested that the Farrs dismiss their suit against Tokai Rika, yet the Farrs were unreceptive so that ultimately, Toyota filed the present action for declaratory relief.

Based on the foregoing, the court concludes that Toyota has established its contractual obligation to defend and indemnify Tokai Rika in connection with the Farrs' litigation against Tokai Rika, and has likewise established the Farrs' obligation under the settlement agreement to indemnify Toyota for the expenses it has incurred in defending Tokai Rika against the Farrs' claim in the underlying lawsuit, and that the Farrs have failed to create a triable issue of fact as to their claims of waiver and estoppel. Accordingly, it is ordered that Toyota's motion for summary judgment, to the extent it is construed as seeking an adjudication of its right to indemnity from the Farrs for Tokai Rika's defense costs, is granted.[5]

---

**5.** Toyota has suggested that the court establish a briefing schedule to address the fees and costs that the Farrs are obligated to reimburse plaintiffs for defending Tokai Rika in

the underlying litigation. The court will direct this request to the magistrate judge for action.